**JACINTOPORT CORP.,**
**Plaintiff-Appellant,**

v.

**GREATER BATON ROUGE PORT COMMISSION,**
**Defendant-Appellee.**

**No. 84–3365.**

United States Court of Appeals,
Fifth Circuit.

June 10, 1985.

Rehearing Denied July 29, 1985.

Charles D. Marshall, Jr., Andrew Podolnick, New Orleans, La., for plaintiff-appellant.

Fred Belcher, Jr., Baton Rouge, La., for defendant-appellee.

Before WISDOM, REAVLEY, and RANDALL, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents the question whether the Greater Baton Rouge Port Commission is entitled to immunity from suit in federal court by virtue of the Eleventh Amendment. The district court, 599 F.Supp. 21, ruled that the Commission is entitled to immunity from suit. The court felt bound by *Miller v. Greater Baton Rouge Port Commission*, 1954, 225 La. 1905, 74 So.2d 387, and by *Pacific Railroad v. Travelers Ins. Co.*, E.D.La.1968, 281 F.Supp. 100, which described the Com-

mission as an executive department of the State of Louisiana and therefore an alter ego of the state. We hold that neither decision controls the precise question before us. We further hold that under the tests of this Court and other courts, especially the Courts of Appeals of the Third and Sixth Circuits, the Commission does not merit Eleventh Amendment immunity. Although the Commission's members serve at the pleasure of the governor, they enjoy considerable autonomy in the exercise of their powers. The Commission's activities are undertaken only for the Greater Baton Rouge Port, its bonds have only an ancillary effect on the state, and the Commission generates its own revenues. Finally, any judgment against the Commission by Jacintoport will, on the record before us, have no effect on the state treasury. We reverse the trial court.

## I. STATEMENT OF THE CASE

The Jacintoport Corporation brought this action against the Greater Baton Rouge Port Commission alleging that the Commission had constructed adjacent to Jacintoport's property two buoys in the bed of the Mississippi River that now impair access to its property from the river. These buoys are used to help in the mooring of vessels for loading and unloading at the public wharf operated by the Commission and leased to Apex Petroleum Fuel and Terminal Oil Company, located immediately down river from the plaintiff's property. Jacin-

toport prayed for injunctive relief and alternatively for money damages.

The case was tried on the merits without a jury and submitted for decision. After the trial, the district court noted a written stipulation earlier admitted in the proceedings that "the commission is an agency, political subdivision or alter ego of the state of Louisiana" and on February 10, 1984, requested that counsel for both sides brief the issue whether this action is barred by the Eleventh Amendment. On May 4, 1984, the district court found that the Commission was immune from suit in federal court and dismissed the action. This appeal followed.

## II. DISCUSSION

There is considerable uniformity in the circuits in their determination of whether an entity may enjoy immunity under the Eleventh Amendment.[1] Because the question of diversity jurisdiction in a suit against an "agency" of the state frequently parallels this Eleventh Amendment inquiry, we can draw upon this jurisprudence.[2]

We take as the starting point for determining the immunity of the Commission the Supreme Court's discussion in *Lake Country Estates v. Tahoe Regional Planning Agency*, 1979, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401. There, the Supreme Court denied Eleventh Amendment immunity to a bi-state planning agency created

---

**1.** The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Hans v. Louisiana*, 1889, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, extended the reach of the amendment to cases brought against the state by citizens of that state. The parties raise none of the conceptual issues discussed in *Pennhurst State School and Hospital v. Halderman*, 1984, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67. The narrow issue this case presents is the applicability of the doctrine of sovereign immunity to the particular port commission serving Baton Rouge.

**2.** Chief Judge Seitz discussed the relationship between immunity under the Eleventh Amend-

ment and diversity jurisdiction in his concurring opinion in *Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n*, 3 Cir.1979, 598 F.2d 1303, 1309:

> "It is surprising, however, given the divergent principles underlying the two inquiries, that the only distinction between them to have received judicial recognition to date is that the state may waive its eleventh amendment sovereign immunity but is unable to waive the lack of subject matter jurisdiction if diversity does not exist in a given suit."

Because the waiver of Eleventh Amendment immunity is not at issue in this case, the determination of Eleventh Amendment immunity and citizenship for purposes of diversity jurisdiction is the same. *See infra* note 3.

by California and Nevada and sanctioned by Congress:

"By its terms, the protection afforded by that Amendment is only available to 'one of the United States.' It is true, of course, that some agencies exercising state power have been permitted to invoke the Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself. But the Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, *even though such entities exercise a 'slice of state power.'*"

440 U.S. at 400–01, 99 S.Ct. at 1177, 59 L.Ed.2d at 410 (emphasis added).

Although sometimes local governmental entities may be held to be an arm of the state and thereby enjoy the state's Eleventh Amendment immunity, *Sessions v. Rusk State Hospital,* 5 Cir.1981, 648 F.2d 1066, 1069, independent local political subdivisions are not entitled to that immunity even though they exercise a "slice of state power". This Circuit has outlined the general inquiry as follows: "A federal court must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself." *Laje v. R.E. Thomason General Hospital,* 5 Cir.1982, 665 F.2d 724. If the state is a "necessary party", then the suit is typically barred by the Eleventh Amendment.

### A. The District Court's Holding

The district court first stated that "Louisiana courts have repeatedly held that the Greater Baton Rouge Port Commission is an executive department of the state of Louisiana", citing *Miller v. Greater Baton Rouge Port Commission,* 1954, 225 La.

1095, 74 So.2d 387, 389, 390.[3] The district court next relied on an earlier district court opinion holding that the Port Commission is the "alter ego of the State of Louisiana". *Missouri Pacific Railroad v. Travelers Ins. Co.,* E.D.La.1968, 281 F.Supp. 100, 103. Finally, although the district court acknowledged the many comparable statutory powers of the Commission and the Board of Commissioners of the Port of New Orleans (held to be an independent legal entity not entitled to immunity in *C.H. Leavell & Co. v. Board of Commissioners,* 5 Cir.1970, 424 F.2d 764), the court felt compelled to give the Commission immunity because of Louisiana jurisprudence and the district court opinion in *Missouri Pacific.*

Upon review, we find that the cases relied upon by the district court are not dispositive of the issue. The Louisiana cases cited by the district court both in the instant case and in the *Missouri Pacific* opinion did not deal with the precise question before us, nor was their inquiry based on even analogous jurisprudential concerns guiding a determination of immunity under the Eleventh Amendment. Our examination of the Commission under the standards established by this Court and by other Circuits convinces us that, although the question is a close one, the Commission does not enjoy Louisiana's Eleventh Amendment immunity. We accordingly disaffirm *Missouri Pacific* to the extent it conflicts with the holding in this opinion.

### B. Treatment of the Baton Rouge Commission by Earlier Courts

■ Our Circuit has held that, in determining immunity under the Eleventh Amendment, a factor that "subsumes all others" is the treatment of the entity in state courts. *Huber, Hunt & Nichols v. Architectural Stone Co.,* 5 Cir.1980, 625

---

**3.** *Miller* held that the Commission "is not a corporation but an Executive Department of the State". 74 So.2d at 390. "The Port Commission is an Executive Department of the State and the term notes or bonds issued by it are the primary obligations of the State...." *Id.* at 389. The

district court's opinion also referred to *Greater Baton Rouge Port Comm'n v. Morley,* 1957, 232 La. 87, 93 So.2d 912, 915, and *Greater Baton Rouge Port Comm'n v. Watson,* 1953, 224 La. 136, 68 So.2d 901.

F.2d 22, 25. The overarching importance of this factor was reiterated in the analogous inquiry of citizenship for diversity jurisdiction. *Tradigrain, Inc. v. Mississippi State Port Authority,* 5 Cir.1983, 701 F.2d 1131, 1132. Federal courts attempt thereby to ascertain whether the entity is "separate and distinct" or whether the action is "in effect, a suit against the State" barred by the Eleventh Amendment. *Louisiana Land & Exploration Co. v. State Mineral Board,* 5 Cir.1956, 229 F.2d 5, 7.

Similarly, the Third and Sixth Circuits have held that although the question of Eleventh Amendment immunity is a matter of federal law, state decisions concerning the relationship of the entity to the state may be "an important, and under certain circumstances a controlling factor" in determining immunity under the Eleventh Amendment. *Blake v. Kline,* 3 Cir.1979, 612 F.2d 718, 722, *cert. denied,* 1980, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112; *see also Hall v. Medical College,* 6 Cir. 1984, 742 F.2d 299, 302, quoting *Blake* with approval.

In *Miller v. Greater Baton Rouge Port Commission,* 1954, 225 La. 1095, 74 So.2d 387, taxpayers sought to enjoin the Commission from issuing term notes or bonds, whether the issuance was pursuant to a resolution adopted by the Commission or was under the Louisiana constitutional amendment establishing the Port Commission. The relevant issue in that case was whether Act 9 of 1952, which empowered the Commission to issue bonds guaranteed by the state, had the improper effect of providing "the loan of credit of the State to a corporation". *Id.,* 74 So.2d at 389. The court found the guarantee was proper: "The Port Commission is not a corporation but an executive department of the state." *Id.* at 390.

This single sentence pertaining to bond underwriting does not dispose of the question of the Commission's Eleventh Amend-

ment immunity. Although *Miller* holds that the Commission is an "agent" of the state insofar as the state ultimately guarantees the Commission's bonds, the case is devoid of any language expressing or implying that this agency status is sufficiently broad based to make the Commission an "alter ego" of the state.

This Court impliedly rejected a similar argument for the Board of Commissioners of the Port of New Orleans in *C.H. Leavell & Co. v. Board of Commissioners,* 5 Cir. 1970, 424 F.2d 764. Although the state guaranteed the New Orleans Commission's bonds, *id.* at 766, which would cast the Commission as an "agency" of the state under *Miller,* we found that the New Orleans Commission was a sufficiently separate entity from the state to sustain diversity jurisdiction, *id.* at 767. We found "no controlling State precedent" on whether the New Orleans Commission (the "Dock Board") was the alter ego of the State of Louisiana: "The resolution of this issue requires an *Erie* supposition as to Louisiana law, since no definitive precedent can be found. We hold the Dock Board, as a State agency, has a separate legal identity from the State of Louisiana and affirm the decision of the District Court." *Id.* at 765. Because the analysis of an agency's status is virtually identical for determining immunity under the Eleventh Amendment and citizenship for diversity jurisdiction,[4] our holding was the equivalent of a finding that the Dock Board had no Eleventh Amendment immunity. We therefore decline to afford the Commission in this case immunity under the Eleventh Amendment when it has simply been described, without more, as an "agency" of the State.

■ Even without *Leavell,* we would decline to predicate a broad immunity on the basis of the narrow holding of *Miller.* This Circuit's test for Eleventh Amendment immunity examines many factors; the

---

**4.** This Court has repeatedly held that "the analysis of an agency's status is virtually identical whether the case involves a determination of immunity under the eleventh amendment or a determination of citizenship for diversity juris-

diction". *Tradigrain v. Mississippi State Port Authority,* 5 Cir.1983, 701 F.2d 1131, 1132; *see Laje v. R.E. Thomason General Hospital,* 5 Cir. 1982, 665 F.2d 724, 726 n. 2.

state's guarantee of the entity's bonds is only a part of that inquiry. It would be inconsistent with this Circuit's test for determining immunity to rely on *Miller,* because immunity of the Port Commission was never an issue in that case, and the analysis examined only a part of the many factors we must weigh here in determining the Commission's immunity. Accordingly, we are not bound by *Miller* in our determination of the Commission's Eleventh Amendment status.

In *Missouri Pacific Railroad v. Travelers Insurance Co.,* E.D.La.1968, 281 F.Supp. 100, the district court held that the Commission was the alter ego of the State of Louisiana rather than a citizen of the state for purposes of establishing diversity jurisdiction. The court ruled:

"The provisions of the constitutional amendment and the legislative act creating the Port Commission clearly support the holding of the Louisiana Supreme Court that the Commission is, in fact, an executive department of the State of Louisiana and thus the alter ego of the State, and thus it is not a 'citizen' of the State such as to invoke the diversity jurisdiction of this Court."

*Id.* at 103.

Although we recognize that the inquiry into an agency's citizenship for diversity jurisdiction and into its status for governmental immunity under the Eleventh Amendment are virtually the same, *see* note 3, we nevertheless decline to follow *Missouri Pacific* in determining whether the Eleventh Amendment bars suit against the Commission in federal court. We do not consider this case to be controlling for a number of reasons. First, Judge West himself, the author of the *Missouri Pacific* opinion, did not consider that holding to bar a later suit against the Commission by a railroad company seeking injunctive relief. *See Louisiana & Arkansas Railway v. Missouri Pacific Railroad,* E.D.La.1968, 288 F.Supp. 320, *aff'd,* 5 Cir.1969, 415 F.2d

751, *cert. denied,* 1970, 396 U.S. 1060, 90 S.Ct. 757, 24 L.Ed.2d 754.[5] More importantly, a de novo analysis of the Baton Rouge Commission under the test for Eleventh Amendment immunity enunciated by this Circuit in *Laje v. R.E. Thomason General Hospital,* 5 Cir.1982, 665 F.2d 724, and *Tradigrain, Inc. v. Mississippi State Port Authority,* 5 Cir.1983, 701 F.2d 1131, convinces us that the Commission should not have governmental immunity. To the same effect, see *Hall v. Medical College,* 6 Cir.1984, 742 F.2d 299, and *Blake v. Kline,* 3 Cir.1979, 612 F.2d 718, *cert. denied,* 1980, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112. We therefore hold that the Baton Rouge Port Commission is subject to suit in federal court, and disaffirm *Missouri Pacific* to the extent it conflicts with our holding today.

*C. The Important Factor of Financial Independence*

■■■ One of the most important goals of the immunity of the Eleventh Amendment is to shield states' treasuries. *See Edelman v. Jordan,* 1974, 415 U.S. 651, 663, 97 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662, 672–73. The concern in the inquiry into the entity's financial autonomy is whether the judgment will be satisfied by the entity's funds or by state appropriations. As the Supreme Court stated, "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit". *Ford Motor Company v. Department of Treasury,* 1945, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389, 394. The purpose of the immunity therefore largely disappears when a judgment against the entity does not entail a judgment against the state.

■■■ Following the implications of this jurisprudence, both the Third and Sixth Circuits have adopted specific inquiries in assessing an entity's financial autonomy. In

**5.** In this later opinion, Judge West again described the Commission as "an executive depart-

ment of the State of Louisiana". *Id.* at 321.

those circuits, the courts of appeals consider the most important aspect of financial independence to be whether, on the record before the Court, a judgment for the plaintiff would be satisfied from the entity's own funds or from the state treasury. *See Hall*, 742 F.2d at 304; *Blake*, 612 F.2d at 723–24, 726. Our Court has similarly held that the most important factor in assessing an entity's eligibility under the Eleventh Amendment is "whether the funds to defray any award would be derived from the state treasury". *Laje v. R.E. Thomason General Hospital*, 5 Cir.1982, 665 F.2d 724, 727.

On the record before us, it appears that any judgment obtained by Jacintoport can be satisfied by the Commission itself. The trial court considered the issue of damages ripe for resolution, but declined to address the matter because of concerns over Eleventh Amendment immunity. On appeal, we have the benefit of the trial court's record. That record shows that even the most favorable estimation of Jacintoport's monetary damages does not reach a tenth of the Commission's surplus revenue in a "good year"—of which it has had several recently. The State of Louisiana will not incur liability on this judgment's account. We specifically decline to reach the question of this Commission's immunity in an instance where the size and nature of the judgment sought would clearly result in liability for the state.

The inquiry into other aspects of financial autonomy is more ill-defined. The common factor is the extent of the state's liability for the entity's general debts and obligations (as opposed to liability for a judgment). For example, where the state's only liability was in guaranteeing a state authority's notes and bonds, courts have found that this "ancillary effect" on the state treasury does not confer immunity under the Eleventh Amendment. *Blake*, 612 F.2d at 726; *Morrison-Knudsen Co. v. Massachusetts Bay Transp.*, D.Idaho 1983, 573 F.Supp. 698, 701–02. Where the State of Ohio annually funded the difference between a medical college's revenues and expenses, however, the Sixth Circuit held that

"any distinction between MCO's appropriated and self-generated revenues in the context of Eleventh Amendment immunity would be a pure exercise in elevating form over substance". *Hall*, 742 F.2d at 305; *cf. Tradigrain v. Mississippi State Port Authority*, 5 Cir.1983, 701 F.2d 1131, finding that the state's status as *primary* guarantor of the Port Authority's bonds was an indicium that the Authority was the alter ego of the State of Mississippi. In this circuit, we have found probative the fact that a hospital district was financed through levies that were separate from other county or state taxes and through bonds sold upon the full faith and credit of the district. *Laje*, 665 F.2d at 727. The Court found "most telling" in *Laje* that the Texas Constitution provided that a hospital district "shall never become a charge against the State of Texas". *Id.*

Judged by these tests, the Commission is not sufficiently connected to the State to be accorded immunity under the Eleventh Amendment. The deposition of Mr. C.W. Herbert, executive director of the Commission since May 1959, shows that the Port Commission is completely self-supporting; all construction, maintenance, and purchases mentioned in the deposition have been funded by tariffs that the Commission assesses on traffic through the Port. The Commission is thus readily distinguishable from the medical college in *Hall*, where the deficit was annually funded by Ohio. The legislature has empowered the Commission, upon approval of the State Bond Commission, "to incur debt for its lawful purposes and to issue *in its name* negotiable bonds or notes". La.Rev.Stat.Ann. 34:1224 (West 1984) (emphasis added). In the first instance, the bonds constitute a general obligation of the Commission. Should the Commission default, the bonds are next obligations subject to the full faith and credit of the Parish of East Baton Rouge, the Parish of West Baton Rouge, and the Parish of Iberville. Finally, should these parishes default, the bonds are subject to the full faith and credit of the State of Louisiana. We find that this tertiary liabil-

ity has only an ancillary effect on the State treasury and thus discourages us from conferring immunity.

## D. The Autonomy of the Commission

A second factor of great significance, although less important than financial independence, is the entity's degree of local autonomy. *See Laje*, 665 F.2d at 727, stating, "Courts typically look at the degree of local autonomy and control, and most importantly whether the funds to defray any award would be derived from the state treasury". Local autonomy is not only a measure of the closeness of the connections between the entity and the State, it is also the mechanism through which the Eleventh Amendment "assure[s] that the federal courts do not interfere with a state's public policy and its administration of internal public affairs". *Blake*, 612 F.2d at 725; *cf. Hall*, 742 F.2d at 306, discussing control by the state of the state colleges' educational programs through appointments and statutory provisions governing the organization and functioning of the colleges.

The Commission has argued that it is not autonomous, pointing out that the Baton Rouge Commissioners serve at the pleasure of the governor, La.Rev.Stat.Ann. 34:1221 (West Supp.1984), which may show a lack of autonomy. *Cf. Gibson-Homans Co. v. New Jersey Transit Corp.*, D.N.J. 1982, 560 F.Supp. 110, 113, finding that a corporation was "not autonomous from the Executive Branch as a whole given the Governor's power to appoint all of the members of the governing board, to remove them for cause and to veto any decision made by the board".

█ It is true that the vulnerability of the commissioners to the governor's pleasure militates against a finding of local autonomy. In our circuit, however, the determination of an agency's autonomy requires analysis of the "extent of the [entity's] independent management authority", *Huber*, 625 F.2d at 25, not just the independence of the individual commissioners. Here, the record discloses that the Commission has great latitude to enter into contracts to negotiate sales and to formulate and execute policy without additional approval.

█ Local autonomy, of course, is but one factor in the many this Court must weigh, and it has not always been dispositive. *See Tradigrain*, 701 F.2d at 1133, where the Court found the Mississippi Port Authority to be an "alter ego" of the state despite the Authority's "wide latitude and discretion" in the exercise of its duties. Although financial independence and local autonomy are the more important determinants of an entity's Eleventh Amendment immunity, this Circuit, like the Third and the Sixth, uses a multifactored test to assess the entity. We now turn to the remaining factors.

## E. Other Factors in this Circuit

█ Under *Tradigrain v. Mississippi State Port Authority*, 5 Cir.1983, 701 F.2d 1131, this Court must consider the following additional factors:

(1) whether the agency has express authority to sue and be sued in its corporate name;

(2) whether the agency has been granted the right to hold and use property; and

(3) whether the agency is primarily concerned with local, as opposed to statewide, problems.

*See id.* at 1132; *Kurkiewicz v. State*, M.D. La.1983, 560 F.Supp. 911, 913.

As noted by this Court in *Tradigrain*, in a typical situation, some of these factors will point to immunity, while others will just as strongly suggest that the entity is an independent political subdivision. The Court "must never, however, lose sight of the primary question involved: whether the state is the real party in interest in the lawsuit nominally brought against the agency". 701 F.2d at 1133.

The factor enumerated first, the entity's right to sue and be sued, weighs against immunity. Although the Louisiana legislature did not expressly authorize the Commission to sue and be sued in its own

name,[6] the Commission has twice maintained actions in its own behalf and not through the State of Louisiana,[7] and has twice appeared in federal court as a general party.[8] Although the Commission has the right to use the legal services of the Louisiana Attorney General's Office, it can also employ private attorneys to represent it. La.Rev.Stat.Ann. 34:1223(B) (West 1984). We, therefore, believe that this factor also weighs against immunity.

In the case of the Baton Rouge Commission, by statute, "[t]itle to all property and improvements thereon operated by the Commission shall vest in the State of Louisiana". La.Rev.Stat.Ann. 34:1223(C) (West 1964). In the New Orleans Port Authority, by contrast, title to the property it administers vests in the Authority rather than the state. *Leavell*, 424 F.2d at 765. We therefore find that this second factor weighs in favor of immunity.

Finally, we turn to the question whether the Commission is concerned primarily with local rather than state-wide development. The statutory mandate is ambiguous: The Commission is to "regulate the commerce and traffic *within such port area* in such manner as may, in its judgment, be *for the best interest of the state* ". La.Rev.Stat. Ann. 34:1223(B) (West 1964) (emphasis added).

Fortunately, there is guidance from other circuits. Our local/state test is similar to the Third and Sixth Circuits' "governmental" or "proprietary" test. *Hall v. Medical College*, 6 Cir.1984, 742 F.2d 299, 305; *Blake v. Kline*, 3 Cir.1979, 612 F.2d 718, 724, *cert. denied*, 1980, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112; *Morrison-*

*Knudsen v. Massachusetts Bay Transp.*, D.Idaho 1983, 573 F.Supp. 698, 703; *De-Long Corp. v. Oregon State Highway Comm'n*, D.Or.1964, 233 F.Supp. 7, 15, *aff'd*, 9 Cir., 343 F.2d 911, *cert. denied*, 1965, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119. An authority on municipal corporations has suggested the following test to determine whether a particular agency's activity constitutes a "governmental" or "proprietary" function:

> "Although it has been said that the character and nature of municipal corporations remain at all times the same, [footnote omitted] *in their public or governmental capacity they act as the agent of the state for the benefit and welfare of the state as a whole, but when acting for the peculiar and special advantage of their inhabitants, rather than for the good of the state at large, they act in a private or proprietary capacity.*"

*Morrison-Knudsen Co. v. Massachusetts Bay Transp.*, D.Idaho 1983, 573 F.Supp. 698, 703 (quoting 1 McQuillan, Municipal Corporations § 1.09 (1971)) (emphasis added by the district court). Because the object of the Authority's concern is local under the standards set forth by McQuillan, and because it acts for the special advantage of the Baton Rouge Port, it follows that the Commission is performing a proprietary, or local, rather than a governmental, or statewide, function. The third factor therefore weighs against immunity.

## III. CONCLUSION [9]

The question presented by this appeal is a close one. A weighing of all the relevant

**6.** The New Orleans Port Authority, which this Court held to be an independent political subdivision of the state, was never expressly legislatively empowered to sue or be sued in its own name. *See George A. Fuller Co. v. Coastal Plains, Inc.*, E.D.La.1968, 290 F.Supp. 911, 913–14.

**7.** *See, e.g., Greater Baton Rouge Port Comm'n v. Cargill, Inc.*, 1968, 252 La. 718, 214 So.2d 119; *Greater Baton Rouge Port Comm'n v. Morley*, 1952, 232 La. 87, 93 So.2d 912.

**8.** *Louisiana & Arkansas Ry. v. Missouri Pacific R.R.*, E.D.La.1968, 288 F.Supp. 320, *aff'd*, 5 Cir.

1969, 415 F.2d 751, *cert. denied*, 1970, 396 U.S. 1060, 90 S.Ct. 757, 24 L.Ed.2d 754; *Ohio River Co. v. M/V Irene Chotin*, E.D.La.1965, 238 F.Supp. 114.

**9.** Jacintoport has argued that because of the substantial similarities between the New Orleans Port Commission and the Baton Rouge Commission, this Court should accord them similar treatment and decline to grant immunity to the Baton Rouge Commission. *See C.H. Leavell & Co. v. Board of Commissioners*, 5 Cir.1970, 424 F.2d 764, holding that the New Orleans Port Commission was an independent

**444**

factors, however, tips the balance away from immunity. We find of great importance the two particular findings that a judgment against the Commission in this case will not affect the state treasury and that the policies and practices of the state will not be significantly affected. We therefore REVERSE the dismissal for want of jurisdiction and REMAND for further proceedings.

legal entity from the state and was amenable to subject matter jurisdiction. Although the Commission has called our attention to differences between the two entities, we believe that the similarities outweigh the differences, and this conclusion bolsters our holding reached under the multi-factor test of *Tradigrain*, *Hall*, and *Blake*.

The Baton Rouge Port Commission and the New Orleans Port Commission were created under different statutory provisions, but the following similarities emerge:

(1) Both Commissions are selected from names submitted to the governor by local authorities. *Compare* La.Rev.Stat.Ann. 34:1 *with id.* 34:1221.

(2) Both Commissions have the independent authority to make decisions regarding compensation as well as the power to contract for legal, financial, and engineering services. *Compare id.* 34:4 *with id.* 34:1223.

(3) The general rights and powers of the Commissions are analogous. *Compare id.* 34:21 *with id.* 34:1223.

(4) Both Commissions are vested with the authority to expropriate. *Compare id.* 34:23 *with id.* 34:1226.

(5) Both Commissions have similar authority to borrow money and issue bonds. *Compare id.* 34:29 *with id.* 34:1224.

The defendants point out that the Baton Rouge Commissioners are appointed by the governor and serve at the governor's pleasure, unlike the Commissioners of the New Orleans Port Commission. *Compare* 34:1221 *with id.* 34.1. It is true that this structure ties the Baton Rouge Commission more closely to the state. The defendants also point out that the Baton Rouge Commission must take its actions for "the best interest of the state", while the New Orleans Port Commission has no such mandate. We have discussed these factors at greater length in the text of the opinion in the context of *Tradigrain*'s multi-factored test. With respect to statutory similarities and differences, we do not consider these differences to be of sufficient importance to warrant the conclusion that the statutory framework of the New Orleans and Baton Rouge Commissions are more different than alike.