In re Kathleen Burke
FREUDENMANN, Debtor.

Kathleen Burke
FREUDENMANN, Plaintiff,

v.

DRAINAGE DISTRICT # 2, Charles
Warn and Walter Skuta,
Defendants.

Bankruptcy No. 80–00628–H3–11.
Adv. No. 82–2153–H3.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

July 27, 1987.

Ronald J. Blask, Houston, Tex., for plaintiff.

Charles J. Maddox, Jr., Houston, Tex., for defendants.

## MEMORANDUM OPINION

R.F. WHELESS, Jr., Chief Judge.

Kathleen Burke Freudenmann filed for relief under Chapter 11 of the Bankruptcy Code on May 6, 1980. This adversary proceeding was filed on December 1, 1982.

The facts alleged are as set forth below. Freudenmann owns a farm in Matagorda County which is bisected by and borders on West Wilson Creek (the Creek). Drainage District # 2 (the District) cleared the Creek of brush, trees and debris to the edge of Freudenmann's property, but failed to clear the Creek downstream causing a backup of water onto her property reducing her source of income. She seeks equitable restitution in the amount of at least $500,000, or alternatively, an order from this Court enjoining the District from continuing to fail to clear the Creek.

The District alleges that the law leaves the performance or nonperformance of this act to the discretion of the District and although it did attempt to clear the Creek on the adjacent property, that property owner, Frank Lewis, denied permission to peacefully enter and clear the Creek. Lewis demanded that the District construct improvements on his property before he would grant permission to enter, and the District chose not to comply with that demand. The District has filed a Motion to Dismiss and a Motion to Abstain. Each motion is hereby DENIED.

The District's Motion to Dismiss is based on three alternative grounds: lack of subject matter jurisdiction, failure to allege a cause of action allowed by the Texas Tort Claims Act, and protection of the District by the Eleventh Amendment doctrine of sovereign immunity. This Court will discuss each sequentially.

### Discussion

The first issue then, is whether the Bankruptcy Court has subject matter jurisdiction over the controversy. The District claims that Freudenmann's action relies on state law and that the United States Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) applies to strip the present Bankruptcy Court of jurisdiction to hear what are essentially state law claims.

Freudenmann claims that the rule in *Northern Pipeline* is to be applied prospec-

tively only and that the effective date of the decision was subsequent to the filing date of the instant adversary proceeding resulting in a broad pre-*Northern Pipeline* grant of jurisdiction.

■ In 1984, the Federal Judgeship Act was passed by Congress partly to cure constitutional defects identified by the Supreme Court in *Northern Pipeline.* Although there is some confusion as to when the *Northern Pipeline* holding was to take effect, it seems that Congress intended that for most circumstances the Federal Judgeship Act should be applied retrospectively—to cases filed before the effective date of the Act, July 10, 1984. This result was enunciated by the Fifth Circuit in the case of *Carlton v. Baww, Inc.,* 751 F.2d 781, 787 n. 6 (5th Cir.1985). There the Fifth Circuit noted that as a general rule the Court should apply the law as it exists when the Court makes its decision. Two exceptions exist: When the result would be unjust, or when Congress has shown a contrary intent. In the 1984 Act, Congress specifically identified which sections of the Act that it intended to be applied retrospectively. *See:* Pub.L. No. 98–353, 122(b). The implication is that all other sections of the Act should be applied retrospectively. *See: Romeo J. Roy, Inc. v. Northern National Bank,* 740 F.2d 111, (1st Cir.1984); *In re Osborne,* 42 B.R. 988 (W.D.Wis.1984). The Court perceives no injustice which would result from the retroactive application of the 1984 Act in this case, therefore it will apply the current law to the question of jurisdiction.

The 1984 Act makes clear that the Bankruptcy Court receives its jurisdictional grant from the United States District Court, and whatever action the Bankruptcy Court takes is at the behest of the District Court. Therefore, the essential finding to be made is whether the District Court has jurisdiction over this adversary proceeding.

Federal District Courts have original jurisdiction over civil proceedings "arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). District Courts may refer to Bankruptcy Judges in the district "any or all proceed-ings arising in or related to a case under Title 11." 28 U.S.C. § 157(a).

The Bankruptcy Court under the authority of the Federal District Court is empowered to hear any proceeding that is related to a case under Title 11. The Bankruptcy Court may not render a final judgment in non-core proceedings, but must submit its findings of fact and conclusions of law to the District Court for entry of final judgment subject to the District Court's de novo review if a party objects to the Bankruptcy Court's findings. 28 U.S.C. § 157(c)(1).

■ Before applying this rule, one must determine whether this proceeding is "related to" a case under Title 11. For this Court to have jurisdiction over the instant adversary as a "related proceeding" the issue raised in the adversary must be connected closely enough to the bankruptcy case to have a definite effect on the debtor's estate. *Zweygardt v. Colorado National Bank of Denver,* 52 B.R. 229 (Bankr.Colo.1985).

■ It appears that the disposition of Freudenmann's action will affect the property of her estate, since the actions or omissions of the District may have affected a source of income of the estate. Therefore, because this is an action related to a case under Title 11 this Court has jurisdiction to hear the matter. 28 U.S.C. § 157(c)(1).

The next issue to be considered is whether the Texas Tort Claims Act (TTCA) applies to the District so as to waive sovereign immunity and allow for this action under that statute. According to TTCA § 101.001(2)(B) a drainage district is a governmental unit. Section 101.021 states that a governmental unit in the state is liable for property damage, proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if the property damage arises from the operation or use of a motor driven vehicle or equipment and the employee would be personally liable to the claimant according to Texas law. Section 101.056 of the TTCA.

According to TTCA § 101.056 the act does not apply to a claim based on failure of a governmental unit to perform an act that the unit is not required by law to perform or its decision or failure not to perform an act which the law leaves up to the discretion of the governmental unit.

Nothing in the Water Code appears to require the District to clear or maintain any watercourses. Since cleaning and maintaining is discretionary, it appears that this alleged failure to clear by the District is not within the scope of the TTCA. See: *Texas Water Code Ann.,* Powers and Duties (Subchapter D) in which discretionary language, not imperative, is used.

Freudenmann does not base her claim on the TTCA, but bases it instead on the belief that the District is not immune from suit under the Eleventh Amendment of the United States Constitution and the doctrine of sovereign immunity, which is the last alternative ground for the District's motion to dismiss. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State.

This immunity has been extended to protect each state from suits commenced in federal courts by its own citizens. *See: Karpous v. State of Mississippi,* 663 F.2d 640 (5th Cir.1981).

Drainage districts are created by the Texas Constitution article 16 section 59(a). The treatment of such districts by our courts has evolved from granting them complete immunity in the 1940s, 1950s and 1960s to considering them independent from the state in the mid–1970s. In those early cases, drainage districts were treated like counties and were not held liable for the negligence of their agents. *See: Jones v. Jefferson County Drainage District,* 139 S.W.2d 861 (1940); *Rich v. Tarrant County Hospital District,* 480 S.W.2d 622 (1972), holding a county immune; *Hopper v. Midland County,* 500 S.W.2d 552, holding county immune.

This blanket immunity for subdivisions of a state began to erode in the mid–1970s. Courts began to look closely at whether the state was the real defendant or whether the political subdivision was independant of the state for the purpose of the Eleventh Amendment immunity. That immunity was not even in issue in the following cases: *Nueces Co. Drainage District v. Berly,* 519 S.W.2d 938 (Tex.1975); *Wallacy Co. Drainage District v. School District,* 717 S.W.2d 461 (Tex.1986); *Mobil Oil v. Matagorda Drainage District,* 597 S.W.2d 910 (Tex.1980); *Villarreal v. Duval Co. Conservation and Reclamation District,* 567 S.W.2d 259 (Tex.Civ.App.—San Antonio 1978).

In *Jacintoport Corp. v. Greater Baton Rouge Port Commission,* 762 F.2d 435 (5th Cir.1985) our circuit set out a test for determining whether an entity is entitled to Eleventh Amendment immunity noting that the factor that subsumes all others is the treatment of the entity in the state courts (from the mid–1970s immunity for counties and drainage districts is not granted automatically). The Fifth Circuit agreed with the Supreme Court in *Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) that state agencies are permitted to invoke immunity in order to protect the state treasury from liability. *Lake Country* goes on to say that the Court has consistently refused to afford this protection to political subdivisions such as counties and municipalities even though such entities exercise a "slice of state power." 440 U.S. at 400–01, 99 S.Ct. at 1177. *See also: Laje v. Thomason General Hospital,* 665 F.2d 724 (5th Cir.1982). The second factor of *Jacintoport* is the entity's degree of local autonomy. The third set of factors laid out by the court is whether the agency has express authority to sue and be sued in its corporate name; whether the agency has been granted the right to hold and use property; and whether the agency is primarily concerned with local as opposed to statewide problems.

 The heart of any inquiry into the independence of an entity from the state

itself for Eleventh Amendment purposes is a determination of which party bears the financial burden of a judgment. When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. *Edelman v. Jordan*, 415 U.S. 651 at 663, 94 S.Ct. 1347 at 1356, 39 L.Ed.2d 662 (1974) quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 at 464, 65 S.Ct. 347 at 350, 89 L.Ed. 389 (1945); *Accord: Laje v. R.E. Thomason General Hospital*, 665 F.2d 724 at 725 (5th Cir.1982). The funds of the drainage district are derived from taxes levied on property within the boundaries of the district. *Texas Water Code Ann.* 56.244(a) (Vernon 1972). The county treasurer is treasurer for the district but keeps its funds separated from county funds. *Tex. Water Code Ann.* 56.070, 56.181 (Vernon 1972). The county treasurer keeps the funds of a drainage district in two separate funds one of which is the Construction and Maintenance fund derived from taxes on property in the district. Money from this fund is to be used to pay "legal debts". *Tex. Water Code Ann.* 56.242(a) (Vernon 1972). It appears that a judgment against a Texas Drainage District would necessarily be satisfied from the Construction and Maintenance fund.

The second factor considered in *Jacintoport* was local autonomy. Local autonomy is not only a measure of the closeness of the connections between the entity and the state, it is also the mechanism through which the Eleventh Amendment "assure[s] that the federal courts do not interfere with a state's public policy and its administration of internal public affairs." *Jacintoport, supra* at 442, quoting *Blake v. Klein*, 612 F.2d 718 at 735 (3rd Cir.1979). In determining local autonomy, the *Jacintoport* court looked to the extent of the entity's independent management authority—its authority to enter into contracts, to negotiate sales and to formulate and execute policy without additional approval. Directors of a drainage district are either appointed by commissioners court or elected by a majority of the real property taxpayers of the district. *Tex. Water Code Ann.* §§ 56.061, 56.064 (Vernon 1972). Once elected, directors have authority to award contracts, add property to the district and employ an attorney for the district. *Tex. Water Code Ann.* §§ 56.129, 56.716, 56.080 (Vernon 1972). It appears that the directors' actions are subject to approval only by local voters or commissioners court which is concerned with local not statewide matters and that the directors enjoy broad discretionary powers.

As to the third set of factors considered by the *Jacintoport* court, *Texas Water Code Ann.* § 56.118 (Vernon 1972) states that a right-of-way may be obtained by purchase. Section 56.119(a) states that "any district may exercise the power of eminent domain and acquire the right-of-way over and through public and private lands...." These proceedings are carried out in the name of the district. According to § 56.140, watercourses cleaned by a district are the public property of the district. The drainage district has the right to hold and use property.

Section 56.083(a) of the Water Code provides that a district through its board "may sue and be sued in the courts of the state in the name of the district." Clearly the District has express authority to sue and to be sued in its corporate name.

Equally clear is the fact that the District is concerned only with local as opposed to statewide problems. Its scope of authority and its sphere of interest are limited to local matters.

■ The factors set out by the *Jacintoport* court as applied to the case at bar weigh against granting the District immunity under the Eleventh Amendment. Therefore, this Court finds that it has jurisdiction over this case pursuant to 28 U.S.C. § 157(c)(1) because this adversary is related to a case under Title 11, that the state of Texas is not the real party in interest in the suit against the District, and that the Eleventh Amendment does not apply to bar suit against the District.

Finally, the District has requested that this court abstain from hearing this matter pursuant to 28 U.S.C. § 1471(d). Section 1471 gives a court discretion to abstain from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11 in the interest of justice.

Previously Bankruptcy Courts were requested to defer to state courts to decide unsettled questions of state property law and arising in the course of bankruptcy administration. *See: Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478 at 480–84, 60 S.Ct. 628 at 629–31, 84 L.Ed. 876 (1940).

 More recent thought appears to be that the Bankruptcy Court should not exercise abstention merely because the case involves unsettled state property law. For instance, the court in *Banque Francaise du Commerce Exterieur v. Rio Grande Trading, Inc.*, 17 B.R. 134 (Bankr.S.D.Tex. 1981) stated that Congress by enacting 28 U.S.C. § 1471 has created a strong public policy in favor of a pervasive grant of jurisdiction to the Bankruptcy Court. In order to limit that jurisdiction and allow litigation in a different forum, the parties must establish that justice would be best served by the court abstaining. *See also: In re Palmer Construction Co., Inc.*, 7 B.R. 232 (Bankr.D.S.D.1980).

In *In re Ebrights Refrigeration Equipment, Inc.*, 13 B.R. 546 (Bankr.S.D.Ohio 1981) the court stated that the criteria for whether the court should hear and resolve such matters should be such as to almost never countenance abstention unless based upon a determination that the results of the proceeding could not conceivably have any effect upon the estate being administered such as strictly in personam causes of action like divorce. *Accord: In re Federal Storage and Moving Co.*, 22 B.R. 15 (Bankr.N.D.Ill.1982).

The District argues that since the land, the parties and some witnesses are in Matagorda county, then that county would be the most convenient venue. The District has failed to convince this court that justice would best be served by this Court's abstaining. Freudenmann has alleged

damage to her land. The outcome of this litigation will affect property of the estate. In the interest of justice, this court declines to abstain.