TRADIGRAIN, INC., Plaintiff-Appellee,

v.

MISSISSIPPI STATE PORT AUTHORI-
TY, Defendant-Appellant.

No. 82–4120.

United States Court of Appeals,
Fifth Circuit.

April 7, 1983.

Bryant & Stennis, Roger T. Clark, Eaton, Cottrell, Galloway & Lang, Ben H. Stone, Gulfport, Miss., Aultman & Aultman, Lawrence C. Gunn, Jr., Hattiesburg, Miss., for defendant-appellant.

Ernest G. Martin, Jr., Gulfport, Miss., Sidney W. Provensal, Jr., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, THORN-
BERRY and POLITZ, Circuit Judges.

CLARK, Chief Judge:

Tradigrain, Inc., a Louisiana corporation, brought this action against the Mississippi State Port Authority alleging that its rice was damaged while it was stored in the Port Authority's warehouse. Tradigrain predicated jurisdiction on diversity of citizenship between the parties. 28 U.S.C. § 1332. The Port Authority moved to dismiss. It contended that it was an alter ego of the State of Mississippi, and therefore, not a "citizen" for purposes of diversity jurisdiction. The district court rejected this

challenge to its jurisdiction, but, certified the issue for appeal. 28 U.S.C. § 1292(b). We permitted the appeal. Finding that the Port Authority is not a "citizen" for purposes of diversity jurisdiction, we reverse and remand with instructions to dismiss for lack of subject matter jurisdiction.

■ It is well established that a state is not a "citizen" for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973); *Illinois v. City of Milwaukee*, 406 U.S. 91, 98 n. 1, 92 S.Ct. 1385, 1390 n. 1, 31 L.Ed.2d 712 (1972); *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). If suit is brought against an agency which is merely an alter ego of the state, it follows that federal jurisdiction is also lacking. On the other hand, if the agency is an independent one, separate and distinct from the state, the district court can properly proceed to the merits. *Department of Health and Rehabilitative Services v. Davis*, 616 F.2d 828, 833 (5th Cir.1980); *Splendour Shipping and Enterprising Co. v. Bd. of Commissioners of Port of New Orleans*, 477 F.2d 122, 123 (5th Cir.1973); *C.H. Leavell & Co. v. Bd. of Commissioners of Port of New Orleans*, 424 F.2d 764, 765 (5th Cir.1970); *Centraal Stikstof Verkoop., N.V. v. Alabama State Docks Department*, 415 F.2d 452, 457 (5th Cir.1969).

■ In determining whether the agency is an alter ego of the state or an independent agency, the essential question is whether the state is the real party in interest in the lawsuit. *Centraal Stikstof Verkoop., N.V., supra* at 457. The resolution of this question is a matter of state law. *C.H. Leavell & Co., supra* at 765. Cf. *Laje v. R.E. Thomason General Hospital*, 665 F.2d 724, 727 (5th Cir.1982) (When considering whether an agency is immune under the eleventh amendment, the court must "examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself.").

The proper approach to a determination of the alter ego status of the agency was outlined in *Huber, Hunt & Nichols v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980). *Huber, Hunt & Nichols* was decided in the context of the eleventh amendment. However, the analysis of an agency's status is virtually identical whether the case involves a determination of immunity under the eleventh amendment or a determination of citizenship for diversity jurisdiction. Therefore, we adopt the approach outlined in *Huber, Hunt & Nichols* for our analysis in this case.

■ If the agency's status is unclear, the court must look to any and all available sources for guidance. *Id.* at 24. The court should consider whether the agency has been granted the right to hold and use property, whether it has the express authority to sue and be sued in its corporate name, the extent of its independent management authority, and "a factor that subsumes all others," the treatment of the agency by the state courts. *Id.* at 24–25. When examining the extent of the agency's independent management authority, the court should look to whether the agency has the power to make its own hiring decisions, the power to enter into its own contracts, and the power to engage its own counsel. *Laje, supra* at 727; *Davis, supra* at 833 (agency which possesses "generally recognized corporate powers" is a citizen for purposes of diversity jurisdiction); *C.H. Leavell & Co., supra* at 767. When examining the treatment of the agency by the state courts, this court has taken note of the fact that the state has sued the agency in its own courts, and of a state court holding that the statute of limitations, which did not normally run against the state itself, ran against the agency. *C.H. Leavell & Co., supra* at 766–767. Other relevant factors might include: (1) whether the state is responsible for the agency's debt; (2) whether the agency is primarily concerned with local, as opposed to statewide problems; and (3) the degree of general financial autonomy of the agency. *See Laje, supra* at 727; Annot., 6 A.L.R.Fed. 615 (1971, supp. 1981). The source material for the court's analysis is found in the state's constitutional, statutory and decisional law.

In a typical situation, some factors will suggest that the agency is a "citizen" while others will just as strongly suggest that the agency is merely an alter ego of the state. The court must balance these against each other in reaching its conclusion. It must never, however, lose sight of the primary question involved: whether the state is the real party in interest in the lawsuit nominally brought against the agency. With these concepts in mind, we now proceed to place the weights in the pans of the balance to test whether the Authority is a "citizen" for purposes of diversity jurisdiction.

At the outset, we find there is no constitutional or decisional law directly on point. We are therefore left with the Port Authority's enabling act, found at Miss.Code Ann. § 59–5–1 et seq. (1972 supp. 1982). Under the act, the Authority is granted some of the generally recognized powers of an independent agency. For example, it may sue and be sued in its own name, Miss.Code Ann. § 59–5–37 (1972 supp. 1982); purchase, lease and own property, § 59–5–7 (facilities, buildings, vessels), § 59–5–31 (public utility systems and necessary easements), § 59–5–37 (land); and enter into contracts necessary to its operation, § 59–5–37. The Authority is vested with "wide latitude and discretion" in the exercise of its duties. § 59–5–9.

There are many weights, however, that must go on the opposite side. Although the Authority may acquire property, title to all such property vests in the State of Mississippi. Miss.Code Ann. § 59–5–39. While the Authority may cause bonds to be issued to provide funds for operational expenses, the issuance of such bonds is controlled by the state bond commission, § 59–5–41, and the bonds become general obligations of the State of Mississippi and are backed by the full faith and credit of the state. § 59–5–51. Although the Authority may enter into some contracts, contracts involving sums in excess of $2,500 must be advertised, and the contract must be awarded to the lowest bidder. *All* contracts let for port or waterway improvements must be advertised "as required by law for the letting of public contracts." § 59–5–37.

The Authority, in the course of performing its "essential governmental function," is instructed to carry out its purposes "for the benefit of the people of the State of Mississippi." Miss.Code Ann. § 59–5–7. The Authority must make financial reports to the state legislature at each of its regular sessions. § 59–5–54. It is audited at the end of each fiscal year by the state auditor. § 59–5–67. It has the power of eminent domain. § 59–5–39.

Miss.Code Ann. § 59–5–37 is particularly revealing:

> The authority is granted the power to sue and be sued in its own name, and the authority is hereby authorized and directed to take liability insurance on the operation and said facilities, and may be sued by anyone affected to the extent of such insurance carried; provided, however, that *immunity from suit is only waived to the extent of such liability insurance carried,* and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance.

(emphasis added). Inferentially, the Mississippi legislature necessarily must have intended that the Authority enjoy sovereign immunity. Otherwise, it would not have been concerned with waiving that immunity to the extent that insurance was purchased.

The language in the statute strongly suggests that the legislature considered the Authority an alter ego of the State. At the time this statute was enacted, the State of Mississippi enjoyed sovereign immunity. *See Pruett v. City of Rosedale,* 421 So.2d 1046 (Miss.1982) (abolishing doctrine of sovereign immunity, but mandate not to take effect until July 1, 1984). The Authority could only have been immune if it was a part of the state. *Jagnandan v. Mississippi State University,* 373 So.2d 252, 253 (Miss. 1979), *cert. denied,* 444 U.S. 1026, 100 S.Ct. 690, 62 L.Ed.2d 660 (1980) (A state college is an arm of the state and is therefore immune from suit.); *Horne v. State Building Commission,* 233 Miss. 810, 103 So.2d 373, 379–381 (1958) (State Building Commission, with broad discretionary powers to erect and maintain buildings, is an instrumentali-

ty of the state, and is therefore immune from suit.)

■ It is unnecessary to base our conclusion on the statutory language in Miss.Code Ann. § 59–5–37 alone. But that language, in combination with other statutory provisions discussed above, clearly tips the balance in favor of our finding that the Mississippi State Port Authority is merely the alter ego of the State of Mississippi, and as such is not a "citizen" for purposes of diversity jurisdiction.[1] For these reasons, the judgment of the district court is REVERSED. The case is REMANDED with instructions to dismiss for lack of subject matter jurisdiction.

THORNBERRY, Circuit Judge, dissenting:

With deference and respect, I must dissent from the opinion of the majority in this case. In concluding that the Authority is not a citizen under 28 U.S.C. § 1332, the majority has singled out for special emphasis Miss.Code Ann. § 59–5–37.[1] This section provides that the Authority may take out liability insurance on the operation of its facilities, and may be sued in its own name to the extent that it is covered by such insurance. The statute explicitly waives the Authority's immunity from suit where claimed damages do not exceed the amount of insurance carried.

Implicit in this waiver is the notion that the Mississippi Legislature intended the Authority to enjoy immunity in suits claiming damages in excess of the amount of insurance coverage. This limited reservation of

immunity does not, however, justify the additional inference that the Legislature conceived of the Authority as the alter ego of the State of Mississippi. Rather, it is much more likely that in exposing the Authority to limited liability for acts arising out of its daily business activity, the Legislature perceived that agency as an independent entity more like a corporation than an arm of the government.[2] Where immunity from suit is the hallmark of an agency inseparable from the state it serves, an explicit waiver of immunity can only operate to sever that agency from the state. Stated differently, the proper focus in analyzing the significance of a waiver is on that which is waived, not on that left untouched by the waiver.

The majority appears to argue that because the Legislature originally intended the Authority to enjoy absolute immunity from suit, it was and always shall be a non-citizen under § 1332. But if the Legislature's original intent were determinative of this issue, then even a *complete* subsequent waiver of immunity would be insufficient to confer citizen status on the Authority. This is clearly untenable and contrary to long-settled legal doctrine. *See Parden v. Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 1210, 12 L.Ed.2d 233 (1964); *Reagan v. Farmers' Loan & Trust Co.,* 154 U.S. 362, 14 S.Ct. 1047, 1052, 38 L.Ed. 1014 (1894); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3524 at 77 (1975). The only question remaining is whether an explicit subsequent partial waiver of immu-

1. The Authority places strong reliance on *C.H. Leavell & Co. v. Bd. of Commissioners of Port of New Orleans,* 424 F.2d 764 (5th Cir.1970). In that case, we held that the Board of Commissioners of the Port of New Orleans was a citizen for purposes of diversity jurisdiction. But that case turned on two significant factors not present here. In *C.H. Leavell & Co.,* the State of Louisiana had sued the Board in its own courts. In addition, the state courts had previously held that prescription ran against the Board but not against the state itself.

1. The authority is granted the power to sue and be sued in its own name, and the authority is hereby authorized and directed to take liability insurance on the operation of said facilities, and *may be sued by anyone affect-*

ed to the extent of such insurance carried; provided, however, that immunity from suit is only waived to the extent of such liability insurance carried, and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance. Miss.Code Ann. § 59–5–37 (Supp.1982) (emphasis added).

2. The present case concerns the alleged breach of a bailment contract by the Authority. This is surely just the sort of act the Legislature had in mind when it enacted Miss.Code Ann. § 59–5–37 to permit injured parties to recover losses suffered through the Authority's wrongful acts.

nity leaves unaffected the Authority's non-citizen status. Since a complete waiver of immunity would confer citizen status on the Authority in general, it is only logical to conclude that a partial waiver of immunity confers citizen status on the Authority in those cases in which immunity is waived.[3]

The insurance provision of Miss.Code Añn. § 59–5–37 is determinative of a more fundamental issue raised in this appeal, namely, the nature of the state's interest in this lawsuit. The majority has quite correctly noted that "[i]n determining whether the agency is the alter ego of the state or an independent agency, the essential question is whether the state is the real party in interest in the lawsuit." *Centraal Stikstof Verkoop., N.V. v. Alabama State Docks Department,* 415 F.2d 452, 457 (5th Cir.1969). Addressing this question in the related area of eleventh amendment immunity of local government entities,[4] this Court has consistently inquired into "the degree of local autonomy and control, and *most importantly whether the funds to defray any award would be derived from the state treasury." Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir.1982) emphasis added. *See Ronwin v. Shapiro,* 657 F.2d 1071 (9th Cir.1981); *Moore v. Tangipahoa Parish School Board,* 594 F.2d 489 (5th Cir. 1979); *Campbell v. Gadsden County District*

*School Board,* 534 F.2d 650 (5th Cir.1976).[5] Since the Authority's liability under § 59–5–37 is explicitly limited to the amount of insurance coverage, it is clear that awards against the Authority pose no threat to the State Treasury. Under *Laje,* the State is consequently not the real party in interest. Applying the real party in interest test of *Centraal Stikstof Verkoop., N.V.,* the Authority therefore cannot be the alter ego of the State.

The same result is required by the application of those factors which this Court has customarily looked to in determining whether state agencies are citizens for diversity purposes. In the only case in this Circuit directly on point, *C.H. Leavell & Co. v. Board of Commissioners of Port of New Orleans,* 424 F.2d 764 (5th Cir.1970), we analyzed eight separate factors in arriving at our conclusion that the Board was in fact a citizen under § 1332. These were: (1) whether the agency has the right to own property; (2) whether the agency has the right to sue and be sued; (3) the extent of the agency's autonomy; (4) treatment of the agency by the courts of the state;[6] (5) whether the agency has corporate status; (6) whether the agency's acts have statewide effect; (7) whether the agency employs and uses its own counsel; and (8) whether the state is obligated on the agen-

---

**3.** This is not the first time a court has faced the question of whether an agency may be the alter ego of the state for the purpose of one cause of action, while remaining a § 1332 citizen for another. In *21 Properties, Inc. v. Romney,* 360 F.Supp. 1322 (N.D.Tex.1973), the district court held that the New York State Teachers Retirement System was a § 1332 citizen for purposes of equitable relief since granting the relief sought would not require the State to take any affirmative action. At the same time, the court held that the Retirement System was the alter ego of the State of New York for the purpose of a claim for money damages, since such damages could only come out of the State Treasury.

Similarly, the Authority is not the alter ego of the state for the purpose of a damage claim that can be satisfied without recourse to the State Treasury, although it is inseparable from the State where the damages sought would have to be paid out of public funds. Here, of course, Tradigrain seeks damages that are well within the amount of insurance coverage. *See also Harris v. Pennsylvania Turnpike Commission,* 410 F.2d 1332, 1335 36 (3rd Cir.1969),

*cert. denied,* 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970).

**4.** As the majority correctly points out, the analysis of an agency's status is virtually identical whether the case involves a determination of immunity under the eleventh amendment or a determination of citizenship for purposes of diversity jurisdiction.

**5.** *See Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) ("And when the action is in essence one for the recovery of money from the state, the state is the real substantial party in interest and is entitled to invoke its sovereign immunity from suit.")

**6.** Although we relied heavily on this fourth factor in reaching our conclusion in Leavell, the language of the holding in that case makes it clear that our decision was based on all the factors enumerated above. Where this fourth factor is lacking, we must turn to the other seven factors in our determination of citizen status.

cy's bonded indebtedness. *See also Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 1801, 36 L.Ed.2d 596 (1973). In the more recent eleventh amendment case of *Huber, Hunt & Nichols v. Architectural Stone Co.,* 625 F.2d 22 (5th Cir.1980), we modified the first factor, redefining it as the "right to hold and use property," and refined the third to require analysis of the "extent of the [agency's] independent management authority." *Id.,* at 25.

We may at the outset dismiss two of these factors as inapplicable to the facts of the present case. Factor 4, *"Treatment by the Courts of the State,"* is of no help because there are no reported decisions from which one can infer precisely how the courts of Mississippi view the Authority. Factor 6, *"Statewide Effect,"* was not briefed by the parties, probably because this Court in *Leavell* discounted it with the observation that "the fact that a matter has statewide effect does not mean that it has statewide identity." *Leavell,* 424 F.2d at 766. In light of its dismissal in *Leavell,* this factor need not be applied here. This leaves six *Leavell* factors to be scrutinized.

(1) *Right to Hold and Use Property.* Although title to property acquired by the Authority vests in the State, the agency has the right to "acquire, purchase, install, construct, own, hold . . . use" land, facilities, and vessels. Miss.Code Ann. § 59–5–11. This more than meets the "right to hold and use property" requirement of *Huber.*

(2) *Right to Sue and Be Sued.* The Authority may sue and be sued in its own name. Miss.Code Ann. § 59–5–37. This requirement is fully met by the explicit language of the statute.

(3) *Independent Management Authority.* The Authority enjoys considerable independent management authority. It is invested by statute with "wide latitude and discretion in the exercise of its powers and duties." Miss.Code Ann. § 59–5–9.

(5) *Corporate Status.* Although the Authority is not formally incorporated, it is explicitly accorded "corporate purposes" by Miss.Code Ann. § 59–5–7. It is to be oper-

ated for a profit, Miss.Code Ann. § 59–5–17, and can enter into contracts subject to precisely those conditions which one would expect to govern a largely autonomous state agency. It employs its own personnel, and furnishes them with workmen's compensation insurance and retirement benefits. Miss.Code Ann. § 59–5–37. Public employees generally must look to the retirement system established under Miss.Code Ann. § 25–11–101 for benefits. The Authority thus enjoys many of the generally recognized powers of private corporations.[7] Formal incorporation is not a requirement; the Board of Commissioners in *Leavell* was not formally incorporated. In *Department of Health v. Davis,* 616 F.2d 828, 838 (5th Cir.1980), this Court stated: "There is, however, authority in this Circuit to support jurisdiction in a diversity suit between a state agency and a citizen of another state, where the agency is invested with the power to sue and be sued, *and possesses other generally recognized corporate powers." Id.* at 833 (emphasis added). *See Leavell,* 424 F.2d at 766; *Department of Highways v. Morse Brothers and Associates,* 211 F.2d 140 (5th Cir.1954); *Louisiana Highway Commission v. Farnsworth,* 74 F.2d 910 (5th Cir.1935).

(7) *Own Counsel.* The Authority employs its own counsel, and is not represented by the State of Mississippi in this action.

This leaves only factor eight on the debit side of the ledger; bonds issued by the Authority are backed by the full faith and credit of the State of Mississippi. Miss. Code Ann. § 59–5–1. The weight of this factor alone is not sufficient to tip the scales in favor of a finding that the Authority is the alter ego of the State.

But the majority cites a number of new factors in support of its conclusion that the Authority is not a § 1332 citizen. Specifically, the majority points out that the Authority has an essential governmental function, and that in carrying out this function it must act for the benefit of the people of the State of Mississippi. The majority further notes that the Authority has the power

---

7. These broad powers also support a finding of citizen status under factor 3 *supra,* "Indepen- dent Management Authority," *See Laje,* 665 F.2d at 727.

of eminent domain, that it is audited yearly by the State, and that it must submit financial reports to the State Legislature at each of the Legislature's regular sessions.

One would be hard-pressed to find a state agency that was not directed by its creators to act for the benefit of the people of the state it represents. And, general language about "governmental functions" cannot hide the fact that the Authority routinely engages in commercial activity that is anything but "governmental" in nature.

While it is true that the Authority enjoys the power of eminent domain, Miss.Code Ann. § 59–5–39, the Board of Commissioners in *Leavell*, found by this Court to be a citizen under 28 U.S.C. § 1332, enjoyed this same power. La.Rev.Stat.Ann. § 34:23 (West 1964).

The audit and financial report provisions cited by the majority merely impose those accountability requirements to which state agencies are customarily subject. Since the Authority's bonds are backed by the full faith and credit of the State of Mississippi, the State has an understandable interest in exercising some degree of supervision over the agency's accounts. The audit and financial report provisions may be properly subsumed under factor 8, "*The State's Obligation on the Agency's Bonded Indebtedness*," since this obligation is the primary reason for their existence. Since any damage award paid out of insurance proceeds could have little if any impact on the Authority's finances or its ability to honor its bond obligations, these provisions are of questionable significance in determining the Authority's citizen status under § 1332.

In conclusion, the provisions of § 59–5–37 of the Mississippi Code expressly waiving immunity from suits for damages not in excess of the Authority's insurance coverage serve to distinguish the Authority from the State of Mississippi, rather than to confound the two. More important, since the State Treasury is beyond the reach of court-awarded damages, the State is clearly not the "real party in interest," and the Authority cannot be its alter ego. Last, the application of those factors customarily applied by this Court in determining citizen status under 28 U.S.C. § 1332 compels the same conclusion. Broadening the analysis to include a number of additional factors does not change the result when these factors are of little weight, or are already implicit in the traditional analysis. The overwhelming weight of the evidence favors a finding that the Authority is a citizen under 28 U.S.C. § 1332. For these reasons, I must respectfully dissent from the opinion of the majority.