**Aston B. WILLIAMS, M.D., Plaintiff,**

v.

**Frank J. MORGAN, Jr., M.D., Individually and as Executive Officer of the Mississippi Board of Medical Licensure, Defendants.**

**Civ. A. No. J88–0287(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 5, 1989.

---

3. *See supra* note 1.

Terry Wallace, Columbus, Miss., for plaintiff.

Al Nuzzo, Asst. Atty. Gen., and Chris J. Walker, Jackson, Miss., for Dr. Frank J. Morgan, Jr.

## MEMORANDUM OPINION AND ORDER

. TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Frank J. Morgan, Jr., M.D., to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56. Plaintiff Aston B. Williams, M.D., has responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

Plaintiff brought this action against Dr. Frank J. Morgan in his individual capacity and in his official capacity as Executive Officer of the Mississippi State Board of Medical Licensure (the Board) asserting claims for defamation, violation of plaintiff's right to privacy and interference with his prospective contract. These claims are based upon Dr. Williams' allegation that Dr. Morgan divulged confidential and defamatory information concerning him to others which resulted in his being denied employment and hospital privileges. The facts reveal that in March 1987, plaintiff applied to the Board for a Mississippi medical license in anticipation of accepting a job offer from Dr. Jesse C. Williams of the Columbus Family Health Clinic in Columbus, Mississippi. Upon receipt of plaintiff's application, the Board proceeded to investigate and verify his previous employment, including his service as a staff physician at the Army Hospital at Fort Jackson, South Carolina. Information forwarded to the Board by the hospital was made part of plaintiff's application file. Ultimately, his file was complete and, following a June 8, 1987 interview with plaintiff, the Board issued him a Mississippi medical license.

Plaintiff charges in his complaint, though, that despite the Board's issuance of a medical license, he was denied hospital privileges and employment due to Dr. Morgan's having maliciously disclosed privileged, derogatory information contained in plaintiff's application file to various members of the Columbus medical community. Specifically, plaintiff contends that Dr.

Morgan telephoned Columbus Hospital, Inc., Charles Faulker, Administrator of the Golden Triangle Regional Medical Center, and Dr. Jesse C. Williams and informed each that confidential information obtained as a result of the Board's investigation should be requested, and that Dr. Morgan ultimately released that information to Dr. Williams and the hospitals. Plaintiff has not specified the nature of the allegedly defamatory and privileged information but contends that such information was contained in the materials received from the Army Hospital at Fort Jackson.

In contrast to plaintiff's version of events, Dr. Morgan has denied that he initiated any contact with either Golden Triangle Regional Medical Center, Columbus Hospital or Dr. Jesse C. Williams and claims instead that each separately contacted him by telephone requesting information regarding plaintiff's license application. According to Dr. Morgan, he informed them that confidential information contained in plaintiff's file could be disclosed only upon receiving a release executed by plaintiff. Accordingly, when Dr. Jesse C. Williams, on June 11, 1987, presented to the Board a release executed by plaintiff authorizing disclosure of the information in his file, the file was given to Dr. Williams for his review at the Board's office. On June 22, 1987, a copy of plaintiff's file was forwarded to Columbus Hospital as a result of a release it had submitted. However, since no release was ever received from Golden Triangle, no information was given to that institution.

In the present motion, Dr. Morgan seeks dismissal of all claims against him in his official capacity pursuant to immunity afforded him under the eleventh amendment of the United States Constitution. As to the claims against him in his individual capacity, defendant asserts that he is qualifiedly immune from suit under both federal and state law. Alternatively, defendant urges that he is entitled to summary judgment on all claims since the only information disclosed was revealed pursuant to plaintiff's authorization, as evidenced by releases executed by him.

■ An issue not specifically raised but which this court must address concerns this court's subject matter jurisdiction.[1] In his complaint, plaintiff alleged jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332; plaintiff is a New York resident and Dr. Morgan is a resident of Mississippi.[2] Had plaintiff sued defendant solely in his individual capacity, there would be diversity of citizenship. However, plaintiff has sued defendant not only in his individual capacity but in his official capacity as well. A suit against a public officer in his official capacity is, in all respects other than name, treated as one against the entity of which he is an officer. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). And since a state is not a "citizen" for purposes of diversity jurisdiction, if an agency against which suit is brought is not independent but is simply an alter ego of the state, then that agency, likewise, cannot be considered a "citizen" in order to create diversity jurisdiction. *Tradigrain, Inc. v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir.1983). Thus, because the court concludes, *infra*, that the Board functions as an arm of the state rather than as a separate and distinct entity, it follows that diversity jurisdiction is

---

1. Federal courts possess the limited jurisdiction endowed by the United States Constitution and conferred by Congress and, thus, have a duty to examine, *sua sponte* if necessary, the validity of any asserted jurisdictional basis. *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir.1981) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908)).

2. The complaint states that plaintiff was a resident of New York "when the causes of action ... arose." Diversity of citizenship for purposes of diversity jurisdiction is gauged by the parties' citizenship at the time the complaint is filed, not at the time the cause of action accrued. *Russell v. New Amsterdam Cas. Co.*, 325 F.2d 996 (8th Cir.1964). However, whether plaintiff remained a New York resident through the time he filed suit is irrelevant since the court concludes that it is nevertheless without diversity jurisdiction. For present purposes, though, the court will assume that Dr. Williams was a citizen of New York when he filed the lawsuit.

lacking.[3] Nevertheless, plaintiff's complaint appears to state a federal question upon which this court's jurisdiction may be based.

■ According to the "well-pleaded complaint" rule, a federal question must appear in the complaint's statement of plaintiff's cause of action in order to sustain jurisdiction. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–29, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 2094 (1974). Paragraph fifteen of plaintiff's complaint contains the following allegation:

> The defendant ... at all times mentioned herein and while acting in his capacity as executive officer of the Mississippi Board of Medical Licensure, acted with malice and in such manner as to violate plaintiff's fundamental (constitutional) right to privacy and invaded the same by communicating and passing on ... certain derogatory information concerning [plaintiff], which such information was defamatory and privileged. (Parenthetical in original).

In the court's opinion, this statement satisfactorily alleges a federal cause of action: a violation of plaintiff's right to privacy under the United States Constitution. And, since it is neither clearly apparent that the claim is "immaterial and made solely for the purpose of obtaining jurisdiction or ... wholly insubstantial and frivolous," *Southpark Square Ltd. v. City of Jackson*, 565 F.2d 338, 341 (5th Cir.1977) (citing *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)), the court may properly exercise jurisdiction. That plaintiff might not ultimately prevail on the merits of his claim does not affect this conclusion. *See Bell v. Hood*, 327 U.S. at 682, 66 S.Ct. at 776. Indeed, the court simply finds that federal question jurisdiction exists because plaintiff has advanced a plausible, colorable claim that "arises under" federal law and that is not "foreclosed by any prior United States Supreme Court decision or otherwise devoid of merit." *Oneida Indian Nation v. County of Onei-*

*da*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974). The court also has pendent jurisdiction over plaintiff's state law claims since both the federal and state claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

## ELEVENTH AMENDMENT IMMUNITY

■ Eleventh amendment immunity bars suits against a state by its own citizens as well as by citizens of other states unless the state has either consented to suit in federal court or waived the application of the amendment. *Chiz's Motel v. Mississippi State Tax Commission*, 750 F.2d 1305, 1307 (5th Cir.1985). The bar applies with equal force to suits against state agencies which are nothing more than alter egos of the state. The question arises, therefore, whether the Board is an instrumentality of the state such that it is immune from suit under the eleventh amendment. In making this determination, the court is required to examine the Board's powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself. *Laje v. R.E. Thomason General Hospital*, 665 F.2d 724, 727 (5th Cir.1982). Where the status of the agency is unclear, the court must "look to any and all available sources for guidance," *Tradigrain*, 701 F.2d at 1132 (citing *Huber, Hunt & Nichols v. Architectural Stone Co.*, 625 F.2d 22, 24 (5th Cir.1980)), keeping in mind at all times the central issue of whether the state is the real party in interest. To aid in this determination, the Fifth Circuit has offered the following factors for consideration:

> The court should consider whether the agency has been granted the right to hold and use property, whether it has the express authority to sue and be sued in its corporate name, the extent of its independent management authority, and ...

---

**3.** The analysis of the alter ego status of an agency is identical whether the question is one of citizenship for diversity jurisdiction or immunity under the eleventh amendment. *Tradi-*

*grain*, 701 F.2d at 1131. Thus, discussion of that issue is reserved for consideration in connection with the eleventh amendment immunity issues raised by defendant.

the treatment of the agency by the state courts.... When examining the extent of the agency's independent management authority, the court should look to whether the agency has the power to make its own hiring decisions, ... to enter into its own contracts and ... to engage its own counsel.... Other relevant factors might include: (1) whether the state is responsible for the agency's debt; (2) whether the agency is primarily concerned with local, as opposed to statewide problems; and (3) the degree of general financial autonomy of the agency.

*Tradigrain,* 701 F.2d at 1132 (citations omitted).

The courts of Mississippi have apparently not had occasion to address the alter ego status of the Mississippi State Board of Medical Licensure and thus this court must look elsewhere for guidance. The Board was created by legislative enactment and exists under the authority of Miss.Code Ann. § 73–43–1 through 17 (Supp.1988). The nine physicians who comprise the Board are appointed by the governor with the advice and consent of the state senate, Miss.Code Ann. § 73–43–3, such that the state retains a significant measure of control over the Board. The statutory scheme by which the Board is established and governed contains no provision granting the Board the right to hold and use property or to enter into its own contracts, nor does it expressly authorize suits by and against the Board. The Board's capability to be sued is, however, implicit in Miss.Code Ann. § 73–43–17 which establishes venue for suits against the Board, and counsel for the Board, as in this case, is provided by the State Attorney General's Office. Thus, it appears that the scope of the Board's "independent management authority" is quite limited.

There is no indication in the enabling act as to the specific responsibility for the debts of the Board. However, the act does entitle Board members to a per diem for their services and to reimbursement for their expenses and mileage. Miss.Code Ann. § 73–43–7. Significantly, there is no indication—in fact, nothing whatsoever suggests—that the Board is financially autonomous. The indications are to the contrary. For example, the Board has not been exempted from and thus is apparently subject to the boundaries of the state budget,[4] the controlling powers of the State Fiscal Management Board,[5] the concerns of the state treasurer,[6] and the review of the state auditor.[7]

The Board performs an essentially governmental function, the policing of the state's medical profession, including enforcement of state law relative to medical licensing. The Board has the power and responsibility to set policies and professional standards regarding the medical practice of physicians, to consider applications and conduct examinations for medical licensure, to investigate and conduct hearings regarding disciplinary matters and alleged violations of the Medical Malpractice Act, to consider petitions for termination of probation or suspension and for restoration of revoked licenses, and to promulgate and publish rules enabling it to discharge its functions and enforce the provisions of law regulating the practice of medicine. Miss. Code Ann. § 73–43–11. The Board exists to provide *statewide* regulation of physicians in these matters by investigating and reviewing the applications of medical doctors who wish to practice within the state. Clearly, these are not simply local concerns but rather matters which affect the state as a whole and in which the state has a substantial interest due to its concern over the general welfare of its citizens.

In sum, the balance of factors preponderates strongly in favor of a conclusion that the Board acts as an arm of the state in the policing of the medical community. While the Board is vested with broad discretion-

4. Miss.Code Ann. §§ 27–103–77 through 139 (1972 & Supp.1988).

5. Miss.Code Ann. §§ 27–104–1 through 31 (Supp.1988).

6. Miss.Code Ann. § 7–9–1 through 107 (1972 & Supp.1988).

7. Miss.Code Ann. § 7–7–1 through 221 (1972 & Supp.1988).

ary functions, the composition, functions and powers of the Board are ultimately controlled by the governor and the senate of the State of Mississippi. It is a creature of the state and functions as the state within its sphere of authority. Importantly, it appears that the Board is not financially independent such that any judgment obtained by plaintiff in this case would effectively operate against the state. The court thus concludes that the Mississippi State Board of Medical Licensure is a state agency which functions as the alter ego of the state.[8] As such, the Board is immune from suit in federal court under the eleventh amendment unless it has waived that immunity.

In *Pruett v. City of Rosedale,* 421 So.2d 1046 (Miss.1982), the Mississippi Supreme Court partially abolished the judicially created sovereign immunity doctrine. In response to *Pruett,* the Mississippi Legislature enacted Miss.Code Ann. § 11–46–1 through 21 (Supp.1988) by which it expressly waived sovereign immunity for purposes of certain suits in state court proceedings. However, that enactment at section 11–46–5(4) provides that "[n]othing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." Since the state has not otherwise waived its eleventh amendment immunity or consented to be sued in federal court, the eleventh amendment bars any action against Dr. Morgan in his official capacity as Executive Officer of the State Board of Medical Licensure.

## QUALIFIED IMMUNITY

The eleventh amendment does not protect Dr. Morgan from liability in his individual capacity. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, the defense of qualified immunity can protect public officials such as Dr. Morgan from liability in their indi-

vidual capacities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1981). Qualified immunity operates to shield a public officer from suit for acts taken in the performance of discretionary functions unless he

> *knew or reasonably should have known* that the action that he took within the sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause deprivation of constitutional rights or other injury.

*Harlow,* 457 U.S. at 815, 102 S.Ct. at 2737 (quoting *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975)). Thus, the defense of qualified immunity is comprised of both an objective and subjective measurement of official conduct. Under the objective standard, the immunity defense is unavailable to the defendant "if the constitutional right allegedly infringed by [him] was clearly established at the time of [his] challenged conduct, if [he] knew or should have known of that right and if [he] knew or should have known that [his] conduct violated the constitutional norm." *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1978). Under the subjective branch of the doctrine, "an official forfeits his immunity, if whatever the objective state of the law at the time of his conduct, his subjective intent was to harm the plaintiff." *Bogard v. Cook,* 586 F.2d 399, 411 (5th Cir.1978).

In the case at bar, plaintiff charges that defendant violated his constitutional right to privacy by releasing confidential information from his application file to Columbus Hospital, Golden Triangle Regional Medical Center and Dr. Jesse C. Williams, and that in doing so, Dr. Morgan "acted with malice." Plaintiff has also asserted state law claims against defendant for defamation and intentional interference with prospective contract. As will be seen, the

---

**8.** Notably, members of the Texas State Board of Medical Examiners acting in their official capacities have been held to be immune from suit. *See Emory v. Texas State Bd. of Medical Examiners,* 748 F.2d 1023 (5th Cir.1984). Similarly,

the Louisiana State Board of Dentistry has been held to be the "state" for eleventh amendment immunity purposes. *See Neuwirth v. Louisiana State Bd. of Dentistry,* 845 F.2d 553 (5th Cir. 1988).

analysis which applies differs depending upon the nature of the recipient of the information disclosed by Dr. Morgan. Therefore, these issues will be separately considered.

■ As to the release of information to Columbus Hospital, Miss.Code Ann. § 73–25–28(4) provides in pertinent part as follows:

> Notwithstanding any right to privacy, confidentiality, privilege or exemption from public access ... the board *shall provide to any hospital* ... any and all information it may have concerning any physician who has applied for a license ... upon receipt by the board of a written request from the hospital for such information and documentation that the physician has applied for appointment or reappointment to the medical staff of a hospital or staff privileges at the hospital. The board, any member of the board and its agents or employees, acting without malice in providing the documents or information hereunder, shall be immune from civil or criminal liability. (emphasis added)

The qualified immunity enjoyed by a public officer applies to discretionary functions performed by that officer. The above quoted provision eliminates "discretion" in the providing of information concerning an applicant for a medical license and mandates that the information shall be provided to any hospital where the hospital makes written request accompanied by appropriate documentation. As evidence of compliance with the statutory requirement, defendant has submitted in connection with his motion for summary judgment a release

executed by plaintiff authorizing Columbus Hospital's request and inspection of any material necessary for evaluation of plaintiff's professional qualification and competency and of his moral and ethical qualifications pursuant to his application for privileges at that hospital. In response to defendant's motion, plaintiff has not disputed the authenticity or validity of that release. Thus, the defendant is immune from liability by virtue of section 73–25–28(4) unless he acted with malice in providing the information to the hospital.

While plaintiff has alleged in his complaint that Dr. Morgan "acted with malice," he has neither alleged nor adduced proof of any specific facts whatsoever which would tend to support his allegation that defendant acted maliciously either in requesting a release of the hospital or in providing information which plaintiff authorized to be released.[9] Therefore, pursuant to Miss. Code Ann. § 73–25–28(4), defendant is immune from liability for any action based on his having released information to Columbus Hospital.[10]

■ Section 73–25–28 applies only to the release of information to hospitals. Neither that statute nor any of the enabling statutes for the Board address the release of information concerning license applicants to persons such as Dr. Jesse C. Williams or institutions other than hospitals. Medical licensure applications in the possession of the Board are exempt from the provisions of the Mississippi Public Records Act of 1983,[11] unless the physician who made the application provides prior written consent for release of that information. Given the absence of any express

---

**9.** The immunity provided by Section 73–25–28 is akin to qualified immunity. As such, plaintiff's "bare allegations of malice should not suffice to subject" Dr. Morgan to trial. *Harlow,* 457 U.S. at 817, 102 S.Ct. at 2738 (1982).

**10.** Even if, notwithstanding the mandatory nature of the statutory requirements, defendant could be considered to have been performing a discretionary act such that qualified immunity were an issue, it is clear that he would be entitled to qualified immunity for the release of information to Columbus Hospital. As the court has concluded, plaintiff has presented no proof that the defendant acted with malice and,

in disclosing the information to the hospital, defendant acted in accordance with what he clearly perceived and should have perceived to be his statutory duty under state law. He was under no obligation to judge the constitutionality of the statute particularly since it purported to override any "right to privacy" or "confidentiality" which might have existed.

**11.** This act permits private individuals access to public records under certain conditions. *See* Miss.Code Ann. § 25–61–1 through 17 (Supp. 1988).

statutory directive or guidance concerning the release of information to persons or institutions other than hospitals, defendant's decision to allow Dr. Jesse C. Williams to review the information in plaintiff's application file could appropriately be characterized as discretionary such that qualified immunity attached to that act. The question becomes, therefore, whether he forfeited that immunity if he engaged in conduct which he knew or should have known would infringe a "clearly established" constitutional right enjoyed by the plaintiff.

In *Fadjo v. Coon*, 633 F.2d 1172, 1175 (5th Cir.1981), the Fifth Circuit recognized that the right to privacy includes not only a right to personal autonomy but also encompasses one's individual interest in avoiding disclosure of personal matters—that is, the "right to confidentiality." In *Fadjo*, a Florida state attorney investigator had released to insurance companies information about the plaintiff gathered by way of the state's subpoena power and obtained after assurances of absolute confidentiality. While not reaching the merits of his case, the court held that plaintiff had stated a claim under the confidentiality branch of the right of privacy. *Fadjo*, 633 F.2d at 1175. The court's conclusion, though, is one to which other courts have not been readily receptive. *See, e.g., Borucki v. Ryan*, 827 F.2d 836 (1st Cir.1987) (recognizing conflict among circuits on privacy right violation implicated by disclosure of information and holding no clearly established claim for disclosure of psychiatric report). The United States Supreme Court has plainly identified "marriage, procreation, contraception, family relationships and child rearing and education" [12] as areas within the protection of the privacy rights; and while it has recognized the distinctive confidentiality branch of that right,[13] the interest in controversy here has not been definitively included within the zone protected by that right. Therefore, the court

concludes that at the time of defendant's contact with Dr. Jesse C. Williams and his release of information to Dr. Williams, there existed in the law no clearly established constitutional right to confidentiality in the type of information released. And, in the absence of proof that Dr. Morgan acted with malice, he is qualifiedly immune from suit as to plaintiff's claim that he violated plaintiff's right to privacy by divulging confidential information to Dr. Jesse C. Williams. This is particularly so since defendant was presented with a document signed by plaintiff which authorized the Board "to release information obtained in evaluating [his] application for a medical license to Dr. Jesse C. Williams" and which further stated that plaintiff "hold[s] neither party liable." [14]

In addition to defendant's qualified immunity from suit on plaintiff's federal claim, the state law claims are likewise barred on the basis of Mississippi's continued recognition of qualified immunity from suit involving performance of discretionary duties. Although in *Pruett* the Mississippi Supreme Court partially abolished the state's sovereign immunity, the court specifically reserved qualified official immunity granted to legislative, judiciary and executive officials and to public officers who are vested with discretionary authority. Under that immunity, an official performing duties which require personal deliberation, decision and judgment will be qualifiedly immune where the performance of such discretionary duties is at issue. *Davis v. Little*, 362 So.2d 642, 643 (Miss. 1978); *see also Hudson v. Rausa*, 462 So. 2d 689, 694–95 (Miss.1984). This qualified immunity is lost only when an official substantially exceeds his authority under color of his office and where he commits intentional or malicious acts. *Hudson*, 462 So. 2d at 696. In the court's view, the parameters of the immunity available to Dr. Morgan under Mississippi law would parallel that afforded him under federal law. Ac-

---

**12.** *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

**13.** *Whalen v. Roe*, 429 U.S. 589, 598–600, 97 S.Ct. 869, 875–877, 51 L.Ed.2d 64 (1977).

**14.** As with the Columbus Hospital release, plaintiff has not challenged the validity or authenticity of this release.

cordingly, the court concludes that Dr. Morgan did not exceed the bounds of his authorized discretion by providing information to Dr. Jesse C. Williams, and he enjoys immunity from state law claims based on that disclosure of information.

The sole remaining issue presented by this motion is as to defendant's entitlement to summary judgment on plaintiff's claims concerning defendant's alleged release of information to Golden Triangle Regional Medical Center. In his motion, defendant specifically denies having released to that institution *any* information concerning Dr. Williams since that hospital provided the Board with no release, and further specifically denies having initiated any contact with Golden Triangle. In response to defendant's motion, plaintiff has presented no evidence of any nature to dispute defendant's contention and as such, plaintiff has failed to establish any genuine issue of material fact requiring trial of this cause on this count.

In sum, the court finds that plaintiff's suit against defendant in his official capacity is barred by the eleventh amendment to the United States Constitution. Similarly, defendant is entitled to summary judgment on plaintiff's claims concerning defendant's release of information to Columbus Hospital since that information was released pursuant to a validly executed release by plaintiff as authorized by state law. Concerning defendant's disclosure of information to Dr. Jesse C. Williams, defendant is qualifiedly immune under federal and state law and thus those claims must be dismissed. Finally, summary judgment is appropriate as to plaintiff's allegations involving Golden Triangle. Accordingly, defendant's motion to dismiss or in the alternative for summary judgment is granted and this cause will be dismissed.

A separate judgment shall be entered in accordance with Federal Rule of Civil Procedure 56.