**TEXAS COUNTY AND DISTRICT RETIREMENT SYSTEM,**
Plaintiff,

v.

**WEXFORD SPECTRUM FUND, L.P.; Wexford Spectrum Advisors, L.P.; Wexford Capital, L.P.; and Wexford GP, L.L.C., Defendants.**

Case No. A–13–CA–370–SS.

United States District Court,
W.D. Texas,
Austin Division.

July 9, 2013.

Alithea Z. Sullivan, Jennifer Barrett Poppe, Vinson and Elkins, LLP, Austin, TX, Karl S. Stern, Vinson & Elkins, Houston, TX, for Plaintiff.

John Winslow Gasink, S. Abraham Kuczaj, III, Stephen E. McConnico, Scott Douglass & McConnico, LLP, Austin, TX, for Defendants.

### ORDER

SAM SPARKS, District Judge.

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Texas County and District Retirement System (TCDRS)'s Motion to Remand [# 10], Defendants Wexford Spectrum Fund, L.P., Wexford Spectrum Advisors, L.P., Wexford Capital, L.P., and Wexford GP, L.L.C. (collectively, Wexford)'s Response [# 17], and TCDRS's Reply [# 18]; and Wexford's Opposed Motion for Leave to File Sur–Reply [# 21].[1]  Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

TCDRS filed this suit on in Texas state court on April 5, 2013, alleging various state-law causes of action against Wexford. TCDRS was a former limited partner and investor in Defendant Wexford Spectrum Fund, L.P. (the Fund).  On October 17, 2012, the Fund's investors were notified by letter of the Fund's intent to move certain liquid investments into a "side pocket" for illiquid investments.  Investors were given two options: (1) continue to invest in the side pocket, or (2) sell the to-be-transferred assets back to a Wexford affiliate for the Fund's purchase price.  TCDRS opted out of the side pocket deal, and alleges it lost millions in investment returns as a result.

Wexford removed the case to this Court on May 3, 2013, on the basis of diversity jurisdiction.  In the Notice of Removal, Wexford argued the Fund—the only defendant plausibly seen as a citizen of Texas—was improperly joined in an effort to defeat diversity jurisdiction, and therefore the Fund's citizenship should be disregarded for purpose of complete diversity. TCDRS filed an Amended Complaint on May 14, 2013, and now moves to remand the case to the state court.  TCDRS argues (1) diversity jurisdiction does not exist because TCDRS is an alter ego of the State of Texas, rather than a citizen of Texas, and (2) alternatively, the Fund was properly joined and its presence defeats diversity jurisdiction.

---

1.  The motion for leave is GRANTED, and the Court has considered the Sur–Reply, attached as an exhibit to the motion.

## Analysis

### I. Motion to Remand—Diversity Jurisdiction—Legal Standard

"[T]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). Moreover, because removal jurisdiction raises significant federalism concerns, courts must strictly construe removal jurisdiction. *Id.* District courts have original jurisdiction over civil actions between "citizens of different States," where the amount in controversy is over $75,000. 28 U.S.C. § 1332(a). The diversity statute has been interpreted to require "complete diversity"—in other words, the citizenship of every plaintiff must be different from that of every defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). Further, the removal statute states diversity actions are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

### II. Application

■ "It is well established that a state is not a 'citizen' for purposes of diversity jurisdiction." *Tradigrain, Inc. v. Miss. State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir.1983). The effects of this rule extend to any state agency "which is merely an alter ego of the state," but not to independent agencies whose existence is "separate and distinct from the state." *Id.* This distinction turns on "whether the state is the real party in interest in the lawsuit," which is a question of state law. *Id.* Federal courts tasked with making such a determination "must look to any and all available sources for guidance," including (1) whether the agency may hold and use property, (2) whether the agency may sue and be sued in its corporate name, (3) the extent of the agency's independent management authority, and (4) the treatment of the agency by the state courts. *Id.* The fourth factor, treatment by the state courts, " 'subsumes all others.' " *Id.* (quoting *Huber, Hunt & Nichols v. Architectural Stone Co.*, 625 F.2d 22, 24–25 (5th Cir.1980)). The Fifth Circuit has acknowledged these various factors will often point to conflicting results, so courts must carefully balance the factors to arrive at the ultimate answer. *Id.* at 1133.

In *Tradigrain*, the Fifth Circuit considered the citizenship of the Mississippi State Port Authority. The court looked to the Port Authority's enabling statute and found the Port Authority could sue and be sued in its own name, own property, enter into contracts, and had significant discretion in carrying out its duties. *Id.* at 1133. These factors weighed against an alter-ego finding, but were counterbalanced by the significant state involvement in the Port Authority's dealings, despite its broad powers. *Id.* For example, title to property owned by the Port Authority vested in the State of Mississippi, and the Port Authority's contracts were subject to state laws governing public contracts. *Id.* The Port Authority also reported to the state legislature and was audited by the state auditor. *Id.*

Having considered these various factors, the Fifth Circuit turned to the issue it found most persuasive: the Port Authority's entitlement to sovereign immunity. *Id.* ("[T]he analysis of an agency's status is virtually identical whether the case involves a determination of immunity under the eleventh amendment or a determination of citizenship for diversity jurisdiction."). "The Authority could only have been immune if it was a part of the state," and sovereign immunity therefore "tip[ped] the balance" in favor of finding

the Port Authority was an alter ego of the State of Mississippi. *Id.* Other circuits have similarly focused on the availability of sovereign immunity as a crucial determinant of alter ego status. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260–65 (4th Cir.2005) (applying Eleventh Amendment sovereign immunity case law and concluding the University System of Maryland is an alter ego of the State of Maryland); *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir.1981) (Board of Regents of the University of Arizona entitled to sovereign immunity and therefore not a citizen of Arizona).

The Texas legislature created TCDRS by enacting what is now Chapter 481 of the Texas Government Code, pursuant to Article XVI, Section 67 of the Texas Constitution, which requires the Texas legislature to "provide by law for ... the creation by any city or county of a system of benefits for its officers and employees." TEX. CONST. art, XVI, § 67(c)(1)(A); *see also id.* § 67(a)(1). The statute states, "The retirement system is a governmental entity and has the powers, privileges, and immunities of a corporation, as well as the powers, privileges, and immunities conferred by this subtitle." TEX. GOV'T CODE § 841.004(a); *see also* Act of May 27, 2013, 83d Leg., R.S., S.B. 200 (explicitly including TCDRS under the definition of "state governmental entity").

TCDRS is overseen by a Board of Directors, appointed by the Governor of Texas with consent of the Senate, and its Trustees take the "constitutional oath prescribed for officers of the State." TEX. GOV'T CODE §§ 845.002, 845.005. As a governmental entity, TCDRS's meetings and records must be open to the public. *Id.*

§§ 845.007(c), 845.112(c). As a "state agency" under the Texas Insurance Code, TCDRS is subject to various state regulations including the filing of annual reports and actuarial reviews with the State Pension Review Board. TEX. INS.CODE § 1551.003(14); 34 Tex. Admin. Code §§ 101–113 (regulating, for example, benefits calculations and claims procedures); TEX. GOV'T CODE §§ 802.101(c) (requiring filing of actuarial studies and reports with State Pension Review Board), 802.103–04 (requiring annual reporting).

Although Wexford represents Chapter 841 also allows TCDRS to sue or be sued in its own name, there is no explicit "sue or be sued" clause in the statute.[2] With respect to bringing suit, the statute only explicitly contemplates an action for accounting brought by TCDRS in state court. TEX. GOV'T CODE § 841.005; *see also id.* § 841.0051(b) ("The venue of any action brought in state court by the retirement system is in Travis County or in the county in which the defendant is situated, domiciled, or does business."). With respect to being sued, the statute's venue provision at most implies TCDRS may be sued, but venue for suits brought against TCDRS is limited to the state courts of Travis County and the State Office of Administrative Hearings in Travis County. *Id.* § 841.0051(a). As the Ninth Circuit noted in *Ronwin*, "consent to be sued in state court does not necessarily imply consent to be sued in federal court." 657 F.2d at 1073 (citing *Kennecott Copper Corp. v. Tax Comm'n*, 327 U.S. 573, 577–80, 66 S.Ct. 745, 90 L.Ed. 862 (1946)).

Perhaps because of these limiting provisions, the parties represent no court has ever been presented with the question

---

**2.** Even if there were, the Texas Supreme Court has held an explicit "sue or be sued" clause, standing alone, is not an effective waiver of sovereign immunity, as "[t]he phrase is often used to mean only that an entity has the capacity to sue and be sued in its own name." *Tooke v. City of Mexia,* 197 S.W.3d 325, 342 (Tex.2006).

whether TCDRS enjoys sovereign immunity. Wexford identifies only one case in which TCDRS was the defendant. *Schaefer v. TCDRS*, No. 03–00–00635–CV, 2001 WL 578551, at *1 (Tex.App.-Austin May 31, 2001, no pet.) (not designated for publication). This unpublished decision was not a suit in the common sense of the word, but rather was a statutorily authorized administrative appeal. *Id.* at *2 (citing 34 TEX. ADMIN. CODE § 121.14). The court therefore had no need to consider whether TCDRS was entitled to sovereign immunity, and there is no indication the issue was ever raised or even contemplated.

While no court has spoken on the issue with respect to TCDRS, two of Texas's other retirement systems do enjoy sovereign immunity. For example, Texas courts have held the Texas Teacher Retirement System (TRS) is entitled to assert sovereign immunity, and tort and contract claims brought against its wholly-owned title-holding subsidiary were therefore barred. *TRST Corpus, Inc. v. Fin. Ctr., Inc.;* 9 S.W.3d 316, 321–22 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Similarly, the Employees Retirement System of Texas (ERS) is also entitled to sovereign immunity. *Emps. Ret. Sys. of Tex. v. Putnam, LLC,* 294 S.W.3d 309, 324 (Tex.App.-Austin 2009, no pet.). Like TCDRS, both of these retirement programs were created by the Texas legislature pursuant to the Texas Constitution. TEX. CONST. art. XVI, § 67(b)(1) (requiring creation of the TRS); *id.* § 67(b)(2) (requiring creation of the ERS).

When all of these factors are placed on the scale, the balance tips in favor of an alter ego finding. TCDRS is statutorily described as a "governmental entity," a "state agency," and a "state governmental entity." As a governmental entity, TCDRS is immune from suit unless the state has consented to suit. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Like the other state retirement systems noted above, TCDRS's very existence is derived from the Texas Constitution. While its Trustees have some latitude in managing the system's portfolio of assets, the TCDRS is also subject to various laws and requirements by virtue of its status as a government agency. Many of these features are also shared by other state retirement systems held to be arms of the State of Texas. *See* TEX. GOV'T CODE §§ 811.004 (ERS's nearly identical "powers and privileges" grant); 821.004 (same for TRS); 815.103 (ERS's board charged with managing trust's assets); 825.103 (same for TRS).

Wexford's best argument is derived from TCDRS's financial independence: TCDRS does not receive funds from Texas's treasury, a feature which distinguishes it from the TRS and ERS. But even if this factor points away from an alter ego finding, virtually all other indicators point in the opposite direction. On balance, TCDRS appears to be a Texas state agency, created by the State of Texas, regulated by the State of Texas, and protected by virtue of its governmental status. Perhaps this explains why the parties' dealings previously acknowledged TCDRS's sovereign status. *See* Am. Compl. [# 7–2], Ex. B (Side Letter) ¶ 16 ("[Wexford Spectrum Advisors, L.P., and the Fund] acknowledge and agree that [TCDRS] reserves all applicable immunities, defenses, rights and actions arising out of its status as a sovereign state or entity, including those under the Eleventh Amendment to the United States Constitution."). Like the Port Authority in *Tradigrain,* the Court holds TCDRS is an alter ego of the State of Texas, is therefore not considered a "citizen" for purposes of diversity jurisdiction, and remand to the state court is appropriate. *See* 701 F.2d at 1132–33.

## Conclusion

Having concluded TCDRS is an alter ego of the State of Texas, it is unnecessary to consider the parties' improper joinder arguments. Regardless of the Fund's citizenship or the adequacy of the causes of action pleaded against the Fund, this Court lacks subject-matter jurisdiction because this lawsuit is not one between "citizens of different States." 28 U.S.C. § 1332(a)(1); *Tradigrain,* 701 F.2d at 1132 ("If suit is brought against an agency which is merely an alter ego of the state, it follows that federal jurisdiction is also lacking.").

Accordingly,

IT IS ORDERED that Wexford's Opposed Motion for Leave to File Sur–Reply [# 21] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff Texas County and District Retirement System's Motion to Remand [# 10] is GRANTED;

IT IS FURTHER ORDERED that this case is REMANDED to the 261st District Court of Travis County, Texas;

IT IS FINALLY ORDERED that the Clerk of Court shall mail a certified copy of this order to the Clerk of the 261st District Court of Travis County, Texas.